IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM MALDONADO, :
:
      Plaintiff :
:
    v. : CIVIL NO. 3:CV-14-1330
:
WARDEN ROBERT J. KARNES, : (Judge Conaboy)
ET AL., :
:
      Defendants :

## MEMORANDUM
### Background

    William Maldonado (Plaintiff), an inmate presently confined at the Lebanon County Correctional Facility, Lebanon, Pennsylvania, initiated this _pro se_ civil rights action pursuant to 42 U.S.C. § 1983. Accompanying the complaint is an _in forma pauperis_ application.[1] For the reasons set forth below, Maldonado will be granted temporary _in forma pauperis_ status for the sole purpose of the filing of this matter. However, Plaintiff's complaint will be dismissed, without prejudice.

    Named as Defendants are three employees of the Lebanon County Correctional Facility: Warden Robert Karnes; Deputy Warden for Operations Timothy Clements; and Correctional Counselor Tina Verna. Plaintiff indicates that he is presently serving concurrent

---

1. Maldonado completed this Court's form application to proceed _in forma pauperis_ and authorization to have funds deducted from his prison account. The Court then issued an Administrative Order directing the Warden at his present place of confinement to commence deducting the full filing fee from Plaintiff's prison trust fund account.

1

sentences imposed by the Lebanon County Court of Common Pleas and the Lehigh County Court of Common Pleas.

Maldonado's initial claim vaguely asserts that the Warden "told the honorable judges that i [sic] was considered a probalem [sic] prisoner which was totally a lye [sic]." Doc. 1, ¶ IV(1). Plaintiff contends that his statement was false he has been confined at the prison for four (4) months without any disciplinary violations. The only other allegation set forth regarding Warden Karnes is a general allegation that the Warden also stated that Maldonado had requested protective custody.[2]

With respect to Deputy Warden Clements, the Complaint contends that said Defendant incorrectly stated that the Lehigh County Prison refused to take custody of Plaintiff, which Maldonado concludes is incorrect because he was sentenced to serve concurrent sentences at the Lehigh County Prison. See id. at ¶ 2.

While Plaintiff was being held in the prison's protective custody unit, Corrections Counselor Verna purportedly made verbal threats towards the prisoner for filing grievances, refused to let him contact his attorney, or do anything for him "as she's required to as a corr counselor." Id. at ¶ 3. Maldonado seeks injunctive relief, specifically a transfer to the Lehigh County Prison; placement on work release, removal from protective custody and that

---

2. Plaintiff notes that while at the Lebanon County prison he was purportedly assaulted numerous times. There is no discernible claim stated that any of the Defendants either assaulted him or failed to protect his safety.

the warden be directed to prepare a statement admitting that he is not a problem prisoner.

## Discussion

When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not issue if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989), Douris v. Middleton Township, 293 Fed. Appx. 130, 132 (3d Cir. 2008). Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

The United States Court of Appeals for the Third Circuit has added that "the plain meaning of 'frivolous' authorizes the dismissal of in forma pauperis claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995). It also has been determined that "the frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. Denton v. Hernandez, 504 U.S. 25, 33 (1992).

## Verbal Threats

Plaintiff alleges in part that Warden Karnes and Deputy Warden Clements made false statements and that Correctional

3

Counselor Verna verbal threatened him. There is no assertion that any of those purported comments were accompanied by any physical abuse.

The use of words generally cannot constitute an assault actionable under § 1983. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir.); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). Moreover, alleged instances of

4

verbal harassment which are not accompanied by any physical contact are constitutionally insufficient. See <u>Hart v. Whalen</u>, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008); <u>Wright v. O'Hara</u>, 2004 WL 1793018 *7 (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that any of the verbal falsehoods and threats allegedly voiced against Maldonado were accompanied by a reinforcing act involving a deadly weapon as contemplated under <u>Northington</u> and <u>Douglas</u>.  More importantly, it is not alleged that the alleged verbal abuse was accompanied by any physically intrusive behavior.  Given the circumstances described by Plaintiff, the purported verbal remarks attributed to the Defendants were not of such magnitude to shock the conscience as contemplated by this Court in <u>S.M. v. Lakeland School District</u>, 148 F. Supp.2d 542, 547-48 (M.D. Pa.  2001) and thus, did not rise to the level of a constitutional violation.

With respect to the assertion that Plaintiff was falsely described as being a problem prisoner, prisoner's disagreement with "evaluations and opinions regarding him" are insufficient to set forth an actionable constitutional claim. See <u>Paine v. Baker</u>, 595 F.2d 197, 201 (4th Cir. 1979).  Moreover,"defamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." <u>Clark v. Township of Falls</u>, 890 F. 2d 611, 619 (3d Cir. 1989). Accord <u>Siegert v. Gilley</u>, 500 U.S. 226, 233-35 (1991).

Maldonado has not alleged that a significant interest other than potential damage to his reputation occurred as a result of the purported defamation. It is noted that the purported defamation did not cause his arrest or incarceration. Thus, there are no facts to support his apparent claim that the alleged defamatory labeling of the Plaintiff as being a problem prisoner caused him any actual constitutionally recognized injury. Because the Plaintiff does not have a constitutionally protected interest in his reputation, his Complaint to the extent that it seeks to pursue a claim of slander/defamation may not proceed. See Paul v. Davis, 424 U.S. 693, 701-02 (1976)(liberty interest requires more than mere injury to reputation).

**Access to the Courts**

The Complaint includes a vague claim that Correctional Counselor Verna refused to let Plaintiff contact his attorney while he was held in protective custody.

Inmates have a constitutional right of meaningful access to law libraries, legal materials or legal services. Bounds v. Smith, 430 U.S. 817, 821-25 (1977). The United States Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim being pursued in the courts had been frustrated or was being impeded. A plaintiff must also allege an actual injury to his litigation efforts.

Based upon a careful review of the Complaint, Plaintiff raises no contention that his pursuit of a non-frivolous legal claim was frustrated or impeded due to the conduct attributed to

6

Defendant Verna. Accordingly, under the standards announced in Lewis, the Complaint to the extent that it is seeking to assert a denial of access to the courts claim is subject to dismissal.

**Protective Custody**

The United States Supreme Court has held that a federal inmate has "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); James v. Reno, 39 F. Supp. 2d 37, 40 ( D.D.C. 1999)(citation omitted) (a federal inmate "has no liberty interest in his security classification").

Moreover, any lack of change in custody classification and institutional placement did not result in the type of atypical or significant hardship necessary to establish a constitutional violation under Sandin v. Conner, 515 U.S. 472, 480-84 (1995).[3] See James v. Reno, 39 F. Supp. 2d 37, 40 (D.D.C. 1999).

In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court held that while under certain circumstances, states may create liberty interests protected by the Due Process Clause,

> these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 484 (citations omitted). The Court of Appeals for the Third Circuit in Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997),

---

3. The United States Supreme Court in Sandin shifted the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481.

7

addressed an action initiated by a Pennsylvania state inmate who had been held in administrative custody for a prolonged period. The Court applied Sandin and concluded that placement without any type of due process hearing for a period of fifteen (15) months was not an atypical and significant hardship. Furthermore, the inmate's "commitment to and confinement in administrative custody did not deprive him of a liberty interest and that he was not entitled to procedural due process protection." Id. at 708. It added that prolonged confinement in administrative custody, including being required to eat meals in their cell, was not cruel and unusual punishment. Id. at 709. Finally, an inmate placed in administrative custody pursuant to a legitimate penological reason could "be required to remain there as long as that need continues." Id.

There is no assertion by Plaintiff that his placement on protective custody status was not warranted. In fact, Plaintiff indicates that he has been subjected to numerous assaults while in the prison. Second, since Plaintiff indicates that he has only been incarcerated for four (4) months, there is no allegation that the duration of Maldonado's protective custody placement was of such magnitude or duration as to constitute the atypical and significant hardship contemplated under Griffin and Sandin.

In conclusion, the placement of Plaintiff on protective custody status and any associated restrictions and deprivationswithout any claim that it was of a prolonged unwarranted duration does not rise to the level of a viable constitutional claim.

**Retaliation**

8

A liberal reading of the pro se Complaint also indicates that Corrections Counselor Verna retaliated against Plaintiff for his pursuit of administrative remedies.

"Retaliation for the exercise of a constitutional right is itself a violation of rights secured by the Constitution." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990); Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000)(a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied, only that the challenged actions were motivated in substantial part by a desire to punish him for the exercise of a constitutional right).

In Rauser v. Horn, 241 F.3d 330, 333 (2001), the Third Circuit held that a prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected. If the prisoner satisfies that requirement he must then show he suffered some "adverse action" at the hands of prison officials. Id. Allah defined adverse action as being "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah, 229 F.3d at 225.

Next, the prisoner must prove a causal link between the exercise of the constitutional right and the adverse action against him. Under Rauser, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. Id. at 334.

9

Based on those factors, it is clear that Plaintiff has not presented any facts which could establish that his exercise of a constitutionally protected right was a substantial or motivating factor behind the alleged acts of retaliation as required by Rauser. With respect to the factually sparse contentions that Verna made verbal threats and refused to let him contact his attorney, Plaintiff has not sufficiently alleged facts which could support a claim that those actions were retaliatory.

**Work Release**

As partial relief, Plaintiff requests that he be granted work release. An inmate does not have a protected liberty or property interest in prison employment. James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975). The right to earn wages while incarcerated is a privilege, not a constitutionally guaranteed right.

An inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest." Wilkins v. Bittenbender, 2006 WL 860140 *9 (M.D. Pa. March 31, 2006)(Conaboy, J.)(quoting Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995)). See also Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989) (holding inmates have no property interest in continuing in work-release program); Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986) (finding Constitution does not create a property interest in prison employment).

In Winsett v. McGinnis, 617 F.2d 996, 1005 (3d Cir. 1980), the Third Circuit similarly held that "there is no constitutionally mandated right to enter a discretionary parole release program."

The instant plaintiff has no right to employment while he serves his sentence and the work release program is discretionary, see Babcock v. Michelle Snare, et al., Civil No. 94-2054, slip. op. at 8-9 (M.D. Pa. September 29, 1995) (Nealon, J.) (holding that decisions involving work release for county prison inmates are discretionary), Maldonado cannot claim any due process interest in work release program participation arising from the Constitution and as such his request to be placed on work release lacks merit.

**Habeas Corpus**

Maldonado alleges in part that the terms of his sentence are no being properly carried out. Inmates may not use civil rights actions to challenge the fact or duration of their confinement or to seek earlier or speedier release. Preiser v. Rodriguez, 411 U.S. 475 (1975). The United States Court of Appeals for the Third Circuit has similarly recognized that civil rights claims seeking release from confinement sounded in habeas corpus. See Georgevich v. Strauss, 772 F.2d 1078, 1086 (3d Cir. 1985).

The United States Supreme Court in Edwards v. Balisok, 520 U.S. 641, 646 (1997), similarly concluded that a civil rights claim for declaratory relief "based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable" in a civil rights action. Id. at 646. Based on the reasoning announced in Georgevich and Edwards, Plaintiff's present claims that the terms of his sentence are not being properly carried out to the extent that they challenge the fact or duration of his sentence are not properly raised in a civil rights complaint. Accordingly, any such claims will be dismissed without prejudice to

any right Maldonado may have to pursue those allegations via a properly filed federal habeas corpus petition.

**Conclusion**

Since Maldonado's civil rights complaint is "based on an indisputably meritless legal theory," it will be dismissed, without prejudice, as legally frivolous. <u>Wilson</u>, 878 F.2d at 774. An appropriate Order will enter.[4]

_____
RICHARD P. CONABOY
United States District Judge

DATED: OCTOBER 8th, 2014

FILED
SCRANTON

OCT 08 2014

PER_____CT_____
DEPUTY CLERK

---

4. If Plaintiff can allege facts which could establish that the duration of his protective custody has been excessively prolonged; or that he is being subjected to unconstitutional conditions of his confinement; or otherwise cure the deficiencies outlined herein, he may file a motion for reconsideration within fourteen (14) days of the date of this Order.

12